UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| CRISTOBAL CERVANTES | § | |
| | § | |
| Petitioner | § | |
| VS. | § | CIVIL ACTION NO. 5:14-CV-181 |
| | § | CRIMINAL ACTION NO. 5:11-CR-425-2 |
| UNITED STATES OF AMERICA | § | |
| | § | |

## MEMORANDUM AND ORDER

Pending before the Court is Petitioner Cristobal Cervantes' Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Dkt. No. 1; Cr. Dkt. No. 341), memorandum in support (Dkt. No. 17; Cr. Dkt. No. 361), Motion for Counsel (Dkt. No. 18; Cr. Dkt. No. 364), and Motion for Discovery (Dkt. No. 19; Cr. Dkt. No. 365).[1] The Court has carefully reviewed Petitioner's Motions and memorandum in support, along with all pertinent matters in this case. Based on this review and the application of governing legal authorities, Petitioner's Motions (Dkt. Nos. 1, 18, and 19; Cr. Dkt. Nos. 341, 364, and 365) are hereby **DENIED** and his case is **DISMISSED WITH PREJUDICE**.

I. BACKGROUND

On June 7, 2011, a federal grand jury in Laredo, Texas, charged Petitioner in a superseding criminal indictment with: (1) conspiracy to possess with intent to distribute in excess of five kilograms of cocaine; (2) being a felon in possession of a

---

[1] "Dkt. No." refers to the docket number entry for the Court's electronic filing system. The Court will cite to the docket number entries rather than the title of each filing. Unless stated otherwise, "Dkt. No." will be used to refer to filings in the civil case number 5:14-CV-181 and "Cr. Dkt. No." will be used to refer to filings in criminal case number 5:11-CR-425-2.

firearm; (3) using and carrying a firearm during a drug trafficking crime; and (4) aiding and abetting the possession of firearms in furtherance of a drug trafficking crime.[2] On June 27, 2011, a jury found Petitioner guilty on all four counts.[3] He appeared for sentencing on December 12, 2011 before United States District Judge Micaela Alvarez. Judge Alvarez sentenced Petitioner to 360 months for the drug conspiracy conviction and 120 months for the felon-in-possession offense, to run concurrently.[4] Judge Alvarez also sentenced Petitioner to 60 months for the offense of carrying a firearm in relation to a drug trafficking crime, to run consecutive to the other sentence imposed, for a total of 420 months' imprisonment.[5]

Petitioner appealed to the United States Court of Appeals for the Fifth Circuit, who affirmed Petitioner's conviction but remanded for resentencing due to an improperly applied enhancement.[6] At resentencing on July 12, 2013, Judge Alvarez imposed a total term of 352 months' imprisonment.[7] Petitioner again appealed the Court's judgment and sentence, and his appeal to the Fifth Circuit was dismissed as frivolous on September 4, 2014.[8]

On November 10, 2014, Petitioner filed the instant Motion, wherein he asserts eight grounds for relief, and for each ground, states that a "Memorandum in

---

[2] Cr. Dkt. No. 52.
[3] Cr. Dkt. No. 180.
[4] Cr. Dkt. No. 232.
[5] *Id.*
[6] Cr. Dkt. No. 303. The district court applied a two-level enhancement because the drug conspiracy charge involved firearms. *See* U.S.S.G. § 2D1.1(b)(1) ("If a dangerous weapon (including a firearm) was possessed, increase by 2 levels."). However, the Court of Appeals held, and the Government conceded, that this enhancement constituted inappropriate double punishment since Petitioner was also separately sentenced for possession of a firearm in furtherance of a drug trafficking crime. *See* Cr. Dkt. No. 303 at 22.
[7] Cr. Dkt. No. 321.
[8] Cr. Dkt. No. 338.

Support of 2255 [is] being filed separately."[9] Petitioner then filed a motion to obtain transcripts, which the Court denied on December 15, 2014.[10] On January 12, 2015, the undersigned issued an order instructing Petitioner to file his memorandum in support by January 26, 2015, or explain why additional time was needed.[11] Petitioner's memorandum in support was received on March 31, 2015.[12] Petitioner subsequently filed a Motion for Counsel and Motion for Discovery.[13]

Before turning to Petitioner's Motion to Vacate, the Court will first discuss his request for counsel and discovery.

## II. REQUESTS FOR COUNSEL & DISCOVERY

As to Petitioner's request for counsel, the case law is clear that he has no constitutional right to appointed counsel in a § 2255 proceeding.[14] "Postconviction proceedings are not 'ancillary proceedings' for purposes of [the Criminal Justice Act], and there is no constitutional right to counsel in postconviction proceedings."[15] The Rules Governing Section 2255 Cases provides that "the judge must appoint an attorney" to represent a § 2255 movant only "[i]f an evidentiary hearing is warranted . . . ."[16] Otherwise, a court, in its discretion, may appoint counsel "for any financially eligible person who . . . is seeking relief" under 28 U.S.C. § 2255 if it

---

[9] Dkt. No. 1.
[10] Dkt. No. 5.
[11] Dkt. No. 7.
[12] Dkt. No. 17.
[13] Dkt. Nos. 18 & 19.
[14] *Adeleke v. United States*, 550 F. App'x 237, 239 (5th Cir. 2013)); *United States v. Guillory*, No. 2:02-CR-20062, 2013 WL 4782211, at *7 (W.D. La. Sept. 5, 2013) (noting the "long-standing rule that there is no right to counsel in § 2255 proceedings").
[15] *Adeleke*, 550 F. App'x at 239.
[16] Rule 8(c), Rules Governing Section 2255 Proceedings.

"determines that the interests of justice so require."[17]

Similarly, as to Petitioner's request for discovery, the Supreme Court has recognized that "[a] habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course."[18] Rule 6(a) of the Rules Governing § 2255 Cases permits discovery only upon a showing of good cause. To establish good cause, Petitioner must provide "specific allegations" that "show reason to believe that [he] may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief."[19]

Here, Petitioner has not provided specific factual allegations that lead this Court to believe he could demonstrate his entitlement to relief if the facts are fully developed. Furthermore, as discussed later in this opinion, Petitioner's claims are subject to summary dismissal and do not warrant an evidentiary hearing. The interests of justice, furthermore, do not otherwise require appointment of counsel, particularly since Petitioner has demonstrated that he is capable of representing himself in pursuing his Motion to Vacate, since he is intelligent and articulate enough to express his positions to the Court. Moreover, he has not identified any colorable argument that, if developed with the assistance of counsel, could entitle him to relief.

Accordingly, the Court finds that Petitioner is not entitled to discovery or appointed counsel, and his Motion for Counsel (Dkt. No. 18; Cr. Dkt. No. 364), and Motion for Discovery (Dkt. No. 19; Cr. Dkt. No. 365) are hereby **DENIED**.

---

[17] *Id.* (quoting 18 U.S.C. § 3006(A)).
[18] *Bracy v. Gramley*, 520 U.S. 899, 904 (1997).
[19] *Id.* at 908–09 (internal quotation marks omitted).

## III. MOTION TO VACATE

### A. Standard for Relief Under 28 U.S.C. § 2255

"Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice."[20] After conducting an initial examination of the motion, the Court must dismiss it if "it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief . . . ."[21] An evidentiary hearing must be held unless "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."[22] Further, no evidentiary hearing is required if the prisoner fails to produce any "independent indicia of the likely merit of [his] allegations."[23]

Where, as here, the petitioner claims ineffective assistance of counsel, the burden of proof is on the petitioner to demonstrate counsel's ineffectiveness by a preponderance of the evidence.[24] To show that counsel was ineffective, a petitioner must demonstrate first that counsel's performance was deficient, and second, that the deficient performance prejudiced the defense.[25] The allegations of ineffective assistance of counsel must be supported by the record.[26] "Finally, bald conclusory

---

[20] *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992) (per curiam).
[21] 28 U.S.C. § 2255; *Rule 4(b), Rules Governing Section 2255 Proceedings*; *United States v. Sheid*, 248 F. App'x 543, 544 (5th Cir. 2007).
[22] 28 U.S.C. § 2255(b).
[23] *United States v. Edwards,* 442 F.3d 258, 264 (5th Cir. 2006) (quoting *United States v. Cervantes,* 132 F.3d 1106, 1110 (5th Cir.1998)).
[24] *Martin v. Maggie*, 711 F.2d 1273, 1279 (5th Cir. 1983), *cert. denied*, 469 U.S. 1028 (1984).
[25] *Strickland v. Washington*, 466 U.S. 668, 687 (1984).
[26] *United States v. Johnson,* 679 F.2d 54, 58–59 (5th Cir. 1982).

statements by a defendant are not enough to sustain a claim of ineffective assistance of counsel."[27]

B. Analysis

A review of Petitioner's Motion to Vacate and memorandum in support plainly reveals that summary dismissal is appropriate pursuant to Rule 4(b) of the Rules Governing Section 2255. Petitioner's Motion offers eight grounds for relief, each of which is discussed below.

### 1. Ground One: "Outrageous Governmental Misconduct"

Petitioner first claims that his counsel was ineffective by his "failure to challenge the outrageousness of Government's conduct." In particular, Petitioner asserts that the government's conduct was outrageous when it allegedly orchestrated a stash house sting.[28]

"The standard for proving outrageous government conduct is extremely demanding."[29] Petitioner must point to conduct that "is so outrageous that it violates the principle of fundamental fairness under the due process clause of the Fifth Amendment."[30] Such conduct will only be found in the "rarest" of circumstances.[31] Thus, Petitioner has an "extremely high burden" on this claim.[32]

---

[27] *George v. United States*, No. 1:11-CV-120, 2014 WL 1116902, at *7 (E.D. Tex. Mar. 18, 2014) (citing *Sayre v. Anderson,* 238 F.3d 631, 635–36 (5th Cir. 2001)).
[28] Dkt. No. 17 at 9.
[29] *United States v. Garcia*, No. 14-CV-3107, 2014 WL 6463588, at *1–2 (S.D. Tex. Nov. 17, 2014).
[30] *United States v. Mauskar*, 557 F.3d 219, 231–32 (5th Cir. 2009) (citations and quotations admitted).
[31] *Id.*
[32] *United States v. Asibor*, 109 F.3d 1023, 1039 (5th Cir. 1997).

For a defendant to avail himself of this defense, the Fifth Circuit requires a showing of both "government overinvolvement" in the charged crime and that the defendant had merely "a passive role" in the criminal activity.[33] "[A] defendant cannot avail himself of the defense of outrageous government conduct where he has been an *active and willing participant* in the criminal activity that gave rise to his arrest."[34] In specific cases, the Fifth Circuit has found that outrageous governmental conduct does not exist where government agents "both supplied the drugs to defendants and then bought them back with government funds,"[35] and where DEA agents approached a defendant and offered to help him manufacture drugs, phoned him to pursue the arrangement, supplied the expertise, sold the defendant equipment, and then supplied him with the laboratory site.[36]

Here, the record points to several facts that demonstrate Petitioner was a willing and active participant in the armed robbery scheme. Petitioner admits in his memorandum in support that he "agreed to rob the stash house because the agent was persuasive saying that it was a ones [sice] in a lifetime deal," and that he assisted for the purpose of "help[ing] to collect a debt."[37]

The record reflects that Petitioner met multiple times with the undercover agent to discuss the plan, recordings of which were introduced at trial.[38] At the first meeting with Petitioner and a co-defendant, the undercover agent explained his

---

[33] *Id.*
[34] *United States v. Rodriguez*, --- F. App'x ---- No. 13-20208, 2015 WL 1610253, at *5 (5th Cir. Apr. 13, 2015) (emphasis in original).
[35] *See Asibor*, 109 F.3d at 1039–40.
[36] *See United States v. Tobias*, 941 F.2d 267, 270 (5th Cir. 1991).
[37] Dkt. No. 17 at 4, 12.
[38] Cr. Dkt. No. 264, Trial Tr. 190, 204, and 220, June 21, 2011.

proposal to rob a house that contained at least 25 kilograms of cocaine and that was protected by two guards, one of whom was armed.[39] Petitioner and his co-defendant agreed to arrange a crew to commit the robbery.[40]

At the second meeting, Petitioner rebuffed the undercover agent's attempt to meet the crew, stating "[w]e've been there. We've done that."[41] Petitioner also asked if the undercover agent would be interested selling firearms to him.[42] Petitioner thereafter expressed his desire to plan the robbery.[43] When the undercover agent warned Petitioner that there would be a large man guarding the house, Petitioner told the agent, "don't worry about big guys. They're not a problem."[44] At the third meeting, Petitioner again met with the undercover agent to discuss the plan.[45] And, on the day of the planned robbery, Petitioner drove several other co-conspirators to the location.[46] When asked if he was ready to rob the stash house, Petitioner confirmed that he was, and he then held up a Glock pistol and placed it in his waistband.[47] At this time, Petitioner also told the undercover agent that the group "had two long ones," which referred to two SKS rifles.[48] Nothing in the record or in Petitioner's submissions to the Court indicate that at any time during his involvement in the scheme – which he acknowledges spanned "1

---

[39] *Id.* at 194:11–23; 195:5–25: 196:20–25.
[40] *Id.* at 199:24–200:10; 202:2–19.
[41] *Id.* at 207:11–12.
[42] *Id.* at 212:14–17.
[43] *Id.* at 214:9–13.
[44] *Id.* at 215:14.
[45] *Id.* at 219:20–224:10.
[46] *Id.* at 243:18.
[47] *Id.* at 248:2–7.
[48] *Id.* at 248:7–12.

month,"⁴⁹ – did Petitioner express any desire to back out. Thus, Petitioner's allegations, combined with the record, demonstrate that he was not a passive participant.

Moreover, Petitioner has not alleged that there was any coercion that would give rise to a due process violation. To the contrary, Petitioner states there is "no indication that the undercover agent or the C.I. threatened or otherwise coerced Defendants to enter into [sic] conspiracy."⁵⁰

Having reviewed carefully the record and Petitioner's filings, the Court finds no support for his claim of outrageous government conduct. Consequently, Petitioner fails to show that trial counsel was deficient in failing to pursue the defense of outrageous conduct, and no ineffective assistance of counsel is shown.⁵¹

### 2. Ground Two: "Sentence Entrapment and Sentence Manipulation"

Next, Petitioner asserts a claim for sentence entrapment and sentence manipulation. Sentencing entrapment, or sentencing factor manipulation, occurs when a defendant, although predisposed to commit a minor or lesser offense, is entrapped into committing a more serious offense and thereby is subject to greater punishment.⁵² To prevail on such argument, a defendant must demonstrate "outrageous official misconduct [that] overcomes the will of an individual predisposed only to dealing in small quantities for the purpose of increasing the

---

⁴⁹ Dkt. No. 17 at 12.
⁵⁰ Dkt. No. 17 at 11.
⁵¹ *See Strickland*, 466 U.S. at 687.
⁵² *United States v. Jones*, 664 F.3d 966, 984 (5th Cir.2011).

amount of drugs . . . and the resulting sentence of the entrapped defendant."[53] Notably, the Fifth Circuit "has not recognized sentencing entrapment or sentence factor manipulation as cognizable habeas claims."[54] This Court declines to do so.

Even if sentencing entrapment or sentencing manipulation were cognizable habeas claims in this circuit, Petitioner fails to offer any particular allegations or facts to meet his burden with respect to these claims. The Court has already determined that there was no outrageous official misconduct evident in the record and Petitioner's submissions. Moreover, as to his lack of predisposition, the record demonstrates that Petitioner had two prior convictions at the time of his arrest for the stash house robbery conspiracy, including one for possessing a firearm as a previously convicted felon.[55] Petitioner acknowledges in his filing that he was not coerced, but instead that he knew the quantity of drugs that were supposedly in the house to be robbed, and he nonetheless still agreed to rob the house.

Accordingly, Petitioner has also failed to show that trial counsel was deficient in failing to pursue sentencing entrapment or sentence factor manipulation. His claim, therefore, fails.

### 3. Ground Three: "Improper Removal"

Even construing this claim broadly, the Court cannot discern what wrong Petitioner attempts to right. Petitioner is a United States citizen convicted of drug and firearm offenses, not an offense such as illegal re-entry that would involve a

---

[53] *United States v. Snow*, 309 F.3d 294, 295 (5th Cir. 2002).
[54] *United States v. Thang Dinh Ngo*, No. 10-CV-4924, 2013 WL 2386011, at *6 (S.D. Tex. May 30, 2013).
[55] Cr. Dkt. No. 265, Trial Tr. 25:9–14, June 22, 2011.

prior deportation. Further, he was not given any criminal history points for a prior deportation or immigration offense. This claim is denied.

### 4. Ground Four: "Sixth Amendment Violation/Actually Innocent of Enhancement"

Petitioner leaves it to the Court to speculate how his Sixth Amendment rights were violated and to what enhancement he was actually innocent. He further fails to provide any factual basis or allegation other than the most threadbare claim of a constitutional violation.

The Presentence Investigation Report ("PSR") prepared for Petitioner's re-sentencing recommended a two-level increase under U.S.S.G. § 3B1.1(c) because the defendant was deemed an organizer in the criminal activity.[56] Petitioner's counsel did not object to the enhancement, and Petitioner does not put forth any allegations or evidence to show that such objection would have been anything other than futile.[57] To the contrary, the PSR recounted trial testimony that demonstrated defendant was an active member in planning and recruiting individuals to participate in the instant offense.[58] This claim is without merit.

### 5. Ground Five: "Lack of Jurisdiction/And 4th, 5th, 6th Amendment Fatal Defects in the Adversarial Proceedings"

This claim is vague and conclusory. "The . . . presentation of conclusory allegations unsupported by specifics is subject to summary dismissal."[59] Petitioner does not assert any specifics as to what jurisdictional or constitutional defects

---

[56] Cr. Dkt. No. 308 at 12.
[57] *See Emery v. Johnson*, 139 F.3d 191, 198 (5th Cir. 1997) (failure to make a meritless objection cannot be grounds for ineffective assistance of counsel).
[58] *See* Cr. Dkt. No. 308 at 10 (noting the persons recruited by Petitioner to participate in the robbery of the stash house).
[59] *Blackledge v. Allison,* 431 U.S. 63, 74 (1977).

existed in his case so as to be deemed "fatal." Accordingly, this allegation is subject to summary dismissal.

### 6. Ground Six: "Ineffective Assistance of Counsel"

The Court has construed each of Petitioner's claims as arising under ineffective assistance of counsel. Nonetheless, he asserts a separate claim for ineffective assistance of counsel, offering nothing more than a vague and conclusory contention. His "conclusional assertions are 'insufficient to overcome the strong presumption of competency and the high burden of actual prejudice required to prove ineffective assistance of counsel.'"[60] This claims is therefore denied.

### 7. Ground Seven: "Selective Prosecution/In Violation of 8th and 14th Amendment"

Next, Petitioner appears to claim that his counsel was ineffective for failing to raise a selective prosecution argument. To establish that he was selectively prosecuted, Petitioner must show: (1) a prima facie case that he was singled out for prosecution although others similarly situated who committed the same acts have not been prosecuted; and (2) the government's selective prosecution of him was "actuated by constitutionally impermissible motives on its part, such as racial or religious discrimination."[61] There is a presumption that the government "made its decision to prosecute in good faith and in a nondiscriminatory manner."[62]

Here, Petitioner asserts in his memorandum in support that "[t]he Government essentially targets people who are poor and have distorted moral

---

[60] *United States v. Henges*, No. 13-41077, 2015 WL 331112, at *1 (5th Cir. Jan. 27, 2015) (quoting *Carter v. Johnson*, 131 F.3d 452, 464 (5th Cir. 1997)).
[61] *United States v. Ramirez*, 765 F.2d 438, 439–40 (5th Cir. 1985).
[62] *United States v. Webster*, 162 F.3d 308, 334 (5th Cir. 1998).

compasses."[63] However, the Supreme Court "has held repeatedly that poverty, standing alone, is not a suspect classification."[64] To the extent he ascribes poverty as the impressible motive, his claim must fail.

Moreover, in his request for discovery, Petitioner references anticipated claims of racial profiling.[65] The Supreme Court has stated that there is a "rigorous standard for discovery in aid of" a selective prosecution claim.[66] In support of his claim, Petitioner references "statistics regarding the racial makeup of the defendants prosecuted in this district for stash house robberies."[67] Yet, he provides no studies or statistical reports of any kind. Instead, he states that, according to a June 2014 USA Today article, "out of 1,00's [sic] defendants prosecuted or sting by A.T.F. around the country, they are either African or Latin Americans but no whites."[68] While this may be relevant for purposes of impermissible motive, it has no bearing on whether other similarly situated persons who committed the same acts have not been prosecuted. Petitioner has not alleged that any other member of the conspiracy could have been arrested or charged but was not. Rather, Petitioner acknowledges in his filing that "[i]n this instant case, there is no defined pool of

---

[63] Dkt. No. 17 at 11.
[64] *Harris v. McRae*, 448 U.S. 297, 323 (1980). *See also San Antonio Indep. Sch. Dist. v. Rodriguez,* 411 U.S. 1, 19 (1973) (noting that "wealth discrimination alone [does not] provid[e] an adequate basis for invoking strict scrutiny").
[65] Dkt. No. 19 at 4.
[66] *United States v. Armstrong*, 517 U.S. 456, 468 (1996).
[67] Dkt. No. 19 at 4.
[68] Dkt. No. 19 at 4. Petitioner did not provide a copy of the referenced article. Nonetheless, the Court conducted a search and found a July 20, 2014 USA Today article recounting statistics on stash house robberies. *See* Brad Heath, *Investigation: ATF drug stings targeted minorities*, USA TODAY (July 20, 2014), *available at* www.usatoday.com/story/news/nation/2014/07/20/atf-stash-house-stings-racial-profiling/12800195. Although Petitioner asserts that only "Africa and Latin Americans" have been prosecuted for such schemes, the statistics referenced in the article indicate that nearly 10% of those arrested were neither black nor Hispanic. *Id.*

individuals who are charged and subsequently prosecuted differently to whom defendants may compare."[69] Petitioner's reference to one article fails to show any individuals committed the same acts as Petitioner committed. Accordingly, since Petitioner has failed to demonstrate he is entitled to relief on his selective prosecution claim, his attorney was not ineffective by failing to argue it at trial.

### 8. Ground Eight: "Improper Admittance of 404(b) Evidence/Abuse of Discretion"

Petitioner's last claim was raised on appeal without success.[70] It is well established that issues disposed of by a previous appeal cannot be properly raised in a section 2255 motion.[71] Thus, this claim is not cognizable.

To the extent Petitioner claims his counsel was ineffective with respect to the 404(b) evidence, his claim also fails because Petitioner has not demonstrated that his counsel's performance was deficient or that the deficient performance prejudiced the defense.[72] Petitioner makes no allegations of ineffective assistance of counsel which are supported by the record. His bald conclusory statement is insufficient to sustain a claim of ineffective assistance of counsel, particularly where, as here, his counsel filed a request for notice of the Government's intent to use F.R.E. 404(b) evidence;[73] objected to the introduction of the 404(b) evidence at trial; and then raised the issue on appeal.[74] In sum, Petitioner's claims are wholly without merit.

---

[69] Dkt. No. 19 at 11.
[70] *See* Cr. Dkt. No. 303 at 14 (noting that Petitioner's claims under F.R.E. 404(b) are "unpersuasive and do not show an abuse of discretion").
[71] *See United States v. Rocha*, 109 F.3d 225, 229–30 (5th Cir. 1997).
[72] *Strickland*, 466 U.S. at 687.
[73] Cr. Dkt. No. 70.
[74] *See* Cr. Dkt. No. 303 at 14 ("Having reviewed the record and Appellants' briefs, only Milan and Cervantez objected to this evidence at trial.").

## IV. CONCLUSION

For the foregoing reasons, Petitioner's Motion to Vacate (Dkt. No. 1; Cr. Dkt. No. 341), Motion for Counsel (Dkt. No. 18; Cr. Dkt. No. 364), and Motion for Discovery (Dkt. No. 19; Cr. Dkt. No. 365) are **DENIED**, and his case is **DISMISSED WITH PREJUDICE**. The Court finds that Petitioner makes no substantial showing of a denial of a constitutional right, and further, that any appeal would not be taken in good faith. Accordingly, should Petitioner seek a certificate of appealability, same is **DENIED**, and the Court certifies that any appeal should not be taken *in forma pauperis*.

It is so **ORDERED**.

**SIGNED** this 22nd day of June, 2015.

*[signature]*
Marina Garcia Marmolejo
United States District Judge